UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CARDIONET, LLC, and BRAEMAR MANUFACTURING, LLC, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 1:15-cv-11803-IT |
| INFOBIONIC, INC., | * * | |
| Defendant. | * | |

MEMORANDUM & ORDER

March 24, 2017

TALWANI, D.J.

Defendant InfoBionic, Inc., moved to dismiss or stay Plaintiff CardioNet, LLC's non-patent claims pending arbitration. Def. InfoBionic's Mot. Dismiss Pl. CardioNet's Non-Patent Claims Because CardioNet Is Obligated to Arbitrate Them, Or, in the Alternative, to Stay Those Claims Pending Arbitration [#190]. Having concluded that dismissal is improper, see Order [#274], the court now turns to InfoBionic's request to stay the claims pending arbitration.

I. Background

CardioNet and Braemar Manufacturing, LLC filed this action against InfoBionic alleging patent infringement. CardioNet alleges three additional non-patent claims: misappropriation of trade secrets in violation of Mass. Gen. Laws ch. 93, § 42 and Massachusetts common law (Count VII); violation of the Pennsylvania Uniform Trade Secrets Act, 12 Pa. Cons. Stat. § 5301 et seq. (Count VIII); and unfair competition in violation of Mass. Gen. Laws ch. 93A and Pennsylvania common law (Count IX).[1]

---

[1] Braemar Manufacuring, LLC is not a party to the non-patent claims.

1

According to the operative complaint, Dr. Ravi Kuppuraj was employed by CardioNet from 2001 to 2002. During his tenure, Kuppuraj entered into multiple agreements with CardioNet, including a Confidentiality and Non-Disclosure Agreement, an At-Will Employment Agreement, and a Proprietary Information and Inventions Agreement. Kuppuraj subsequently left CardioNet and cofounded InfoBionic, where he became the Chief Technology Officer. As the underlying basis for its non-patent claims, CardioNet alleges that Kuppuraj "improperly accessed, copied, removed, and/or retained" confidential information upon leaving CardioNet in breach of the aforementioned contractual agreements. According to CardioNet, Kuppuraj provided the information to InfoBionic, and InfoBionic used this information in its product, the MoMe® Kardia System, without CardioNet's consent.

InfoBionic's pending motion seeks to stay the claims on the basis of an arbitration agreement between Kuppuraj and CardioNet. The arbitration agreement, which is attached as an addendum to the At-Will Employment Agreement, reads in pertinent part:

> Claims Covered by the Agreement. CardioNet and Employee [Kuppuraj] will settle by arbitration all statutory, contractual, and/or common law claims or controversies ("claims") that CardioNet may have against Employee . . . . Claims subject to arbitration include . . . (ii) claims for breach of any contract or covenant (express or implied); . . . [and] (iv) tort claims . . . .

The agreement "remain[s] in full force and effect," pursuant to a severance agreement Kuppuraj and CardioNet entered into at the conclusion of his employment in 2002.

InfoBionic acknowledges that it is not a signatory to the arbitration agreement between Kupparaj and CardioNet but contends that CardioNet's non-patent claims against InfoBionic are referable to arbitration under the agreement on the basis of equitable estoppel. CardioNet responds that InfoBionic is not entitled to rely on the agreement between CardioNet and

2

Kupparaj, that the claims do not fall within the scope of the agreement,[2] and that InfoBionic has waived its rights to arbitration.

II. Discussion

    *A. Standard*

The Federal Arbitration Act, 9 U.S.C. § 3, allows a party to seek a stay on the ground that an issue is referable to arbitration under an agreement in writing for such arbitration. Under this section, the court, "upon being satisfied that the issue involved . . . is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

    *B. The Court is Satisfied that InfoBionic May Invoke the Arbitration Agreement Between Kupparaj and CardioNet Under the Doctrine of Equitable Estoppel*

"[A] party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002). Accordingly, a party seeking to enforce an arbitration agreement bears the burden of showing "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope." Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011) (quoting InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir. 2003)). A non-signatory to an arbitration agreement "may invoke [9 U.S.C.] § 3 if the relevant state contract law allows [it] to enforce the agreement." Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 632 (2009).

---

[2] CardioNet relies on an exception in the arbitration agreement for "claims . . . for injunctive and/or other equitable relief (remedies requiring a court's rapid injunctive power)."

As a non-signatory to the arbitration agreement, InfoBionic seeks to invoke its provisions under the doctrine of equitable estoppel under California law.[3] The purpose of the doctrine is "to prevent a party from using the terms or obligations of an agreement as the basis for [its] claims against a non[-]signatory, while at the same time refusing to arbitrate with the non[-]signatory under another clause of that same agreement." Goldman v. KPMG LLP, 92 Cal. Rptr. 3d. 534, 543-44 (Cal. Ct. App. 2009). Under California law,

> the *sine qua non* for application of equitable estoppel as the basis for allowing a non[-]signatory to enforce an arbitration clause is that the claims the plaintiff asserts against the non[-]signatory must be dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of the agreement containing the arbitration clause.

Id. at 540.

Claims depend upon the underlying contractual obligations when they "rely on or use . . . terms or obligations of the . . . agreement[] as a foundation." Id. "[M]aking reference to an agreement with an arbitration clause is not enough" if the claim does not "*rely* on the terms of the written agreement." Id. at 541 (emphasis added) (internal quotation marks and brackets omitted).

A claim may be founded in and inextricably intertwined with underlying contractual obligations "when the signatory raises allegations of 'not merely parallel or similar, but substantially interdependent and concerted misconduct by both the non[-]signatory and one or more of the signatories to the contract.'" Id. at 545 (quoting Boyd v. Homes of Legend, Inc., 981 F.Supp. 1423, 1433 (M.D. Ala. 1997)). "[I]t is not enough that the plaintiff be in a position to

---

[3] Section 6 of the arbitration agreement provides that the "[a]greement shall be governed by and interpreted in accordance with the internal laws of the State of California (without regard to conflicts of law principles), and applicable federal law." The parties agree that the court should apply that California law. See also Arthur Andersen, 556 U.S. at 632 (2009).

raise similar and parallel claims against both the other party to the contract and the third party." Id. at 546 (quoting Roberson v. Money Tree of Ala., Inc., 954 F.Supp. 1519, 1529 (M.D. Ala. 1997)). "It is the relationship of the *claims*, not merely the collusive behavior of the signatory and non[-]signatory parties, that is key." Id. at 545. The doctrine of equitable estoppel is not limited to contractual claims but also encompasses claims in tort. Molecular Analytical Sys. v. Ciphergen Biosys., Inc., 111 Cal. Rptr. 3d 876, 894 (Cal. Ct. App. 2010).

Examining each claim individually, the court concludes that InfoBionic is entitled to invoke the arbitration agreement between Kuppuraj and CardioNet.

1. Misappropriation of Trade Secrets (Count VII)

CardioNet brings misappropriation claims under both Massachusetts statutory and common law. To establish a claim under the Massachusetts trade secret misappropriation statute, CardioNet must demonstrate that InfoBionic "embezzle[d], st[ole] or unlawfully t[ook], carrie[d] away, conceal[ed], or copie[d], or by fraud or by deception obtain[ed], from any person or corporation, with intent to convert to his own use, any trade secret, regardless of value." Mass. Gen. Laws ch. 93, § 42. To succeed on its common law claim, CardioNet must show that the information at issue constituted a trade secret, that it "took reasonable steps to preserve the secrecy of" that information, and that InfoBionic "used improper means . . . to acquire and use the trade secret." Data Gen. Corp. v. Grumman Sys. Support Corp., 825 F. Supp. 340, 357 (D. Mass. 1993) (citing J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 260 N.E.2d 723, 729-31 (Mass. 1970); USM Corp. v. Marson Fastener Corp., 393 N.E.2d 895, 899-903 (Mass. 1979); Curtiss-Wright Corp. v. Edel-Brown Tool & Die Co., 407 N.E.2d 319, 323-24 (Mass. 1980)). In sum, for CardioNet to succeed on either claim, it must demonstrate that InfoBionic obtained the information at issue improperly.

The crux of CardioNet's misappropriation claims is that CardioNet obtained the trade secrets improperly because Kuppuraj purportedly breached his contractual agreements and confidential relationship with CardioNet. Because the impropriety alleged was the breach itself, the question of InfoBionic's liability is inextricably bound up with the alleged breach.

Importantly, CardioNet does not allege that InfoBionic obtained the trade secrets through any means other than Kuppuraj's breach of his contractual agreements. CardioNet has not alleged that InfoBionic's employees, while acting as InfoBionic's employees, somehow improperly obtained the trade secrets from CardioNet, or that CardioNet improperly obtained them from Kuppuraj.

In its opposition, CardioNet asserts that the alleged wrongdoing extends beyond Kuppuraj's misappropriation of source code and breach of contract and that the misappropriation claims would be viable even if Kuppuraj never had entered into the contractual agreements with CardioNet. However, the court must focus on the facts as alleged in the complaint. Cf. Goldman, 92 Cal. Rptr. 3d. at 550 ("Because equitable estoppel applies only if the plaintiffs' claims against the non[-]signatory are dependent upon, or inextricably bound up with, the obligations imposed by the contract plaintiff has signed with the signatory[,] . . . we examine the facts alleged in the complaint[].")

Further, CardioNet's assertion that Kuppuraj breached a common law duty to CardioNet, apart from any contractual duty, fails because the arbitration agreement encompasses common law claims as well.

Given that the misappropriation claims are founded in and inextricably intertwined with Kuppuraj's obligations to contracts that are the subject of the arbitration agreement, the misconduct alleged falls within the scope of the arbitration agreement.

2. Pennsylvania Uniform Trade Secrets Act (Count VIII)

CardioNet next alleges violation of the Pennsylvania Uniform Trade Secrets Act, which prohibits the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." 12 Pa. Cons. Stat. § 5302; see also id. §§ 5303-5304. CardioNet alleges that Kuppuraj "copied and/or used source code owned by CardioNet, including atrial fibrillation detection algorithms" and "illegally shared CardioNet's trade secrets with InfoBionic" and that "InfoBionic used those secrets to develop products for InfoBionic." As with the misappropriation claims, the complaint cites Kuppuraj's breach as the sole source of the information at issue. CardioNet only can prevail on the claim by proving that Kuppuraj acquired the trade secrets improperly. Since CardioNet alleges that Kuppuraj acquired them in breach of his contractual agreements, the success of the claim is founded in and inextricably intertwined with the underlying contractual agreements.

3. Unfair Competition (Count IX)

Count IX alleges that InfoBionic engaged in unfair methods of competition in violation of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, and Pennsylvania common law.[4] Specifically, CardioNet alleges that, "[t]hrough InfoBionic's knowing and willful

---

[4] In determining whether a business practice is unfair under Mass. Gen. Laws ch. 93A, the court must assess "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." Barron Chiropractic & Rehab., P.C. v. Norfolk & Dedham Grp., 17 N.E.3d 1056, 1065-66 (Mass. 2014) (quoting PMP Assocs., Inc. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975)).

To prevail on a common law unfair-competition claim, CardioNet must show (1) "the involvement of goods or services"; (2) "a false description or designation of origin with respect to the goods or service involved"; and (3) "a reasonable basis for the belief that one has been injured." Allen-Myland, Inc. v. Int'l Bus. Mach. Corp., 746 F. Supp. 520, 553 (E.D. Pa. 1990), decision supplemented, 770 F. Supp. 1014 (E.D. Pa. 1991).

misappropriation and use of CardioNet's trade secrets for its own profits, InfoBionic has knowingly and willfully engaged in unfair methods of competition and unfair or deceptive trade practices." The very premise of the alleged misappropriation and use of trade secrets, upon which the unfair competition claim is based, is that Kuppuraj provided InfoBionic with secrets he improperly obtained in breach of the contractual agreements with CardioNet. Again, the success of this claim turns on the purported breach of the underlying contractual agreements.

### C. The Court is Satisfied that the Issues are Referable to Arbitration Despite the Agreement's Equitable Relief Exception

The arbitration agreement provides an exception for "claims . . . for injunctive and/or other equitable relief (remedies requiring a court's rapid injunctive power)." CardioNet argues that, because it seeks injunctive and declaratory relief in addition to monetary damages for each of the non-patent claims, its claims are entirely exempt from arbitration.

Although CardioNet has included a demand for preliminary injunctive relief in its complaint, CardioNet has not moved for preliminary injunctive or other relief requiring the court's "rapid injunctive power." And what CardioNet labels as "claims" for injunctive or equitable relief are simply remedies found in the prayer for relief which CardioNet could continue to pursue at the conclusion of the arbitration if consistent with the arbitrator's decision on liability. See, e.g., Proulx v. Brookdale Living Cmty., Inc., 88 F.Supp.3d 27, 34 & n.1 (D.R.I. 2015). Consequently, the court concludes that the non-patent claims for damages are not exempt from arbitration under the agreement's equitable relief exception.

### D. InfoBionic Is Not in Default

The question remains as to whether InfoBionic is in default in proceeding with arbitration. See 9 U.S.C. § 3. Courts analyze default through the prism of the waiver doctrine. Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 12-13 (1st Cir. 2005). In determining whether a

party has impliedly waived its right to arbitration, the court asks whether its actions have resulted in "undue delay and a modicum of prejudice to the other side." Rankin v. Allstate Ins. Co., 336 F.3d 8, 12 (1st Cir. 2003).

The court is troubled by the absence of any steps by InfoBionic to formally initiate arbitration. Nonetheless, InfoBionic's affirmative defense based on the arbitration agreement in its answer when Plaintiffs first raised these claims places a "heavy" burden on CardioNet to prove waiver. Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 807 F.2d 16, 19 (1st Cir. 1986) (quoting Hilti v. Oldach, 392 F.2d 368, 371 (1st Cir. 1968)). In the event that InfoBionic does not proceed expeditiously to initiate the arbitration, CardioNet may move to lift the stay based on such default.

III. Conclusion

For the foregoing reasons and for the reasons stated in the March 1, 2017, Order [#274], Defendant InfoBionic's Motion to Dismiss Plaintiff CardioNet's Non-Patent Claims Because CardioNet Is Obligated to Arbitrate Them, Or, in the Alternative, to Stay Those Claims Pending Arbitration [#190] is ALLOWED IN PART AND DENIED IN PART. Count VII (misappropriation of trade secrets in violation of Mass. Gen. Laws ch. 93, § 42 and Massachusetts common law), Count VIII (violation of the Pennsylvania Uniform Trade Secrets Act), and Count IX (unfair competition in violation of Mass. Gen. Laws ch. 93A and Pennsylvania common law) are STAYED pending the conclusion of arbitration proceedings or until further order of the court.

IT IS SO ORDERED.

Date:  March 24, 2017                              /s/ Indira Talwani
                                                   United States District Judge