UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARDIONET, LLC, and BRAEMAR MANUFACTURING, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> INFOBIONIC, INC., <br><br> Defendant. | * <br> * <br> * <br> * <br> * Civil Action No. 1:15-cv-11803-IT <br> * <br> * <br> * <br> * <br> * |

MEMORANDUM & ORDER

March 29, 2018

TALWANI, D.J.

This court previously allowed in part Defendant InfoBionic, Inc.'s Renewed Motion for Judgment on the Pleadings [#281], finding Claim 31 of U.S. Patent No. 7,212,850 ("'850 Patent") and Claim 12 of U.S. Patent 7,907,996 ("'996 Patent") not patent eligible as a matter of law under Section 101 of the Patent Act, 35 U.S.C. § 101. Mem. & Order [#289]. The court requested additional briefing as to whether the claims were representative of the '850 and '996 Patent claims. Id. Plaintiffs subsequently filed a Motion for Reconsideration [#296] of the Memorandum & Order [#289], a Memorandum [#297] in support of Plaintiffs' motion and in response to the court's request, and other papers. Defendant filed a Brief in Support of Patent-Ineligibility and in Opposition to the Motion for Reconsideration [#304], and other papers. For the reasons set forth below, the court DENIES the motion for reconsideration, and finds that the claims at issue are representative of all claims in the '850 and '996 patents asserted by Plaintiffs against Defendant.

I.  The Court's Prior Findings as to Claim 31 of the '850 Patent and Claim 12 of the '996 Patent

The court previously provided the following overview of the Patents-at-issue:

> The '850 and '996 Patents, titled "System and Method for Processing and Presenting Arrhythmia Information to Facilitate Heart Arrhythmia Identification and Treatment," share an identical specification and are directed to a system and method of reporting arrhythmia events in physiological data. U.S. Patent No. 7,212,850 col. 1 ll. 36-49 (filed May 1, 2007); U.S. Patent No. 7,907,996 col. 1 ll. 39-54 (filed Mar. 15, 2011). The system receives arrhythmia information both from a computer and from user input from a monitoring system. U.S. Patent No. 7,212,850 col. 9 ll. 40-60; U.S. Patent No. 7,907,996 col. 1 ll. 55-67. The system pictographically presents selective information regarding the heart rate data during a defined time period, based on the measure of correlation between the computer-generated and the human-assessed data. U.S. Patent No. 7,212,850 col. 1 ll. 40-49; U.S. Patent No. 7,907,996 col. 1 ll. 40-49. The specifications provide that, by employing pictographic presentations, the claimed invention offers advantages over prior art; it purports to help medical practitioners determine whether a patient is more likely to experience an arrhythmia event at certain times of the day, and the correlation of two sets of data is said to improve the accuracy of the pictographic representation. U.S. Patent No. 7,212,850 col 1. ll. 50-65; U.S. Patent No. 7,907,996 col. 1 ll. 50-65.

Mem. & Order 10-11 [#289].

The court then considered whether the claims from these two patents cited in the Third Amended Complaint, Claim 31 of the '850 Patent and Claim 12 of the '996 Patent, are directed to a common-sense abstract idea, and concluded that they were "directed to the abstract idea of correlating one set of data to another." Id. at 14. As the court explained:

> Claim 31 of the '850 Patent and Claim 12 of the '996 Patent, read in conjunction with the patent specifications, recite a system that receives computer-generated "arrhythmia information from the monitoring system and . . . human-assessed arrhythmia information from the monitoring station," U.S. Patent No. 7,212,850 col. 9 ll. 48-51, to "selectively present[] information regarding the identified events based on the measure of correlation" between the two sets of information, U.S. Patent No. 7,907,996 col. 1 ll. 45-47. The claimed system is analogous to a medical professional analyzing the physiological data and comparing his or her assessment with a colleague's second opinion. The medical professional also consolidates his or her assessment with that of his or her colleague, based on the same physiological data, to arrive at a more accurate diagnosis. This suggests that the claims are directed to the abstract idea of "a longstanding, well-known method of organizing human behavior," where a

2

> computer only facilitates such existing practices. Bascom [Glob. Internet Servs., Inc. v. AT&T Mobility LLC], 827 F.3d [1341,] 1348 [(Fed. Cir. 2016)].
>
> These claims are similar to the claim in Digitech Image Techs., LLC v. Elecs. for Imaging, Inc., 758 F.3d 1344 (Fed. Cir. 2014). . . . The Federal Circuit concluded that the claim was an "ineligible abstract process of gathering and combining data" and that "the two data sets and the resulting device profile are ineligible subject matter." Id. Like the claim in Digitech, the process in Claim 31 of the '850 Patent and Claim 12 of the '996 Patent of "manipulat[ing] existing information to generate additional information is not patent eligible." Id. Claim 31 of the '850 Patent and Claim 12 of the '996 Patent point to a system that combines computer-generated data with human-generated data to produce a pictographic representation.
>
> Plaintiffs argue that Defendant relies on an overly broad construction of the claim by describing it as a correlation of the two sets of data. According to Plaintiffs, the claims are directed to specific inventions in the mobile cardiac telemetry field, similar to the claims in Enfish[, LLC v. Microsoft Corp., 822 F.3d 1327 (Fed. Cir. 2016)]. However, Claim 31 of the '850 Patent and Claim 12 of the '996 Patent are distinguishable from those at issue in Enfish. In Enfish, the claimed invention sought to improve a specific computer functionality—namely, the existing logical model of generating data table. 822 F.3d at 1330. Additionally, the specifications explicitly provided that the patented invention was an improvement to the conventional database structure. Id. at 1337. In contrast, Plaintiffs do not point to an existing computer functionality that the claimed invention seeks to improve but instead argue that the claimed invention improves the *entire* field of mobile telemetry. Further, rather than describing the claimed invention as a specific computer functionality, the specifications for the '850 and '996 Patents describe them as improvements to "a system for reporting information." U.S. Patent No. 7,212,850 col. 2 ll. 25-26; U.S. Patent No. 7,907,996 col. 2 ll. 30-31. Furthermore, the specifications simply point out that this patented system "*can* be implemented using, *for example*, the CardioNet Mobile Cardiac Outpatient Telemetry (MCOT) device." U.S. Patent No. 7,212,850 col. 2 ll. 40-44; U.S. Patent No. 7,907,996 col. 2 ll. 45-48 (emphases added).

Id. at 12-14.

The court then considered Defendant's argument that Claim 31 of the '850 Patent and Claim 12 of the '996 Patent do not add an inventive concept because they "recite only conventional hardware or routine steps" such as a "monitoring system," "monitoring station," "processing system" and "software," and Plaintiffs' response that an ordered combination of the limitations provided an inventive concept. Id. at 14. The court found that the two claims at issue

do not add an inventive concept sufficient to be patent-eligible subject matter under Section 101.

Id. at 16. As the court explained:

> Plaintiffs . . . fail to articulate [an inventive concept]; they point instead to findings by the Patent Trial and Appeal Board that Defendant "failed to demonstrate a reasonable likelihood of establishing the unpatentability of [the] claims." (Internal quotation marks omitted.) However, these findings relate to challenges to patentability under Section 103 of the Patent Act, 35 U.S.C. § 103, not under Section 101. InfoBionic, Inc. v. Braemer [*sic*] Mfg., LLC, No. IPR2015-01705 (P.T.A.B. Feb. 16, 2016); InfoBionic, Inc. v. Braemer [*sic*] Mfg., LLC, No. IPR2015-01704 (P.T.A.B. Feb. 16, 2016).
>
> Claim 31 of the '850 Patent and Claim 12 of the '996 Patent purport to provide for a scheme that generates a graphic presentation of the combined data by instituting a monitoring system that receives data inputs from a computer, a physician, and a processing system that can correlate the two sets of data. U.S. Patent No. 7,212,850 col. 1 ll. 50-65; id. at col. 9 ll. 40-60; U.S. Patent No. 7,907,996 col. 1 ll. 55-67. However, medical professionals long have analyzed physiological data, sought a second opinion to improve accuracy, and identified arrhythmia events from the physiological data. Therefore, the system merely "automate[s] or otherwise make[s] more efficient" traditional methods or techniques existing in the medical field. OIP Techs., Inc. v. Amazon.com, Inc., 788 F.3d 1359, 1363 (Fed. Cir. 2015). While the process certainly would require greater effort without the patented invention, the streamlining of the process, without more, is insufficient to add an inventive concept to an otherwise patent-ineligible abstract idea.
>
> The system that Claim 31 of the '850 Patent and Claim 12 of the '996 Patent describe differs from the one in Bascom. In that case, the Federal Circuit concluded that "the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user," which "[took] advantage of the ability of at least some ISPs to identify individual accounts that communicate with the ISP server, and to associate a request for Internet content with a specific individual account" added an inventive concept. Bascom, 827 F.3d at 1350. In contrast, Claim 31 of the '850 Patent and Claim 12 of the '996 Patent, when considered in their ordered combination, do not harness any particular technical feature of the monitoring system or the processing system. These systems merely facilitate an existing practice in medicine.
>
> Plaintiffs argue that the claims at issue add an inventive concept because the process requires "a monitoring system" and "a processing system." However, a system does not encompass an inventive concept just because it involves a computer system. Bascom, 827 F.3d at 1349. "In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved

> more quickly." SiRF Tech., Inc. v. Int'l Trade Comm'n, 601 F.3d 1319, 1333
> (Fed. Cir. 2010). For example, in SiRF Tech., the Federal Circuit determined that
> the claimed GPS receiver, which translated a plurality of satellite signals into a
> second format supported by the remote receiver, provided a meaningful restriction
> on the scope of the claim because the task could not be performed without the
> machine. 601 F.3d at 1332-33. In contrast, physicians routinely have translated
> cardiac data into diagnostic information or pictographic representations.
> Plaintiff[s'] argument that physicians cannot use their mental capacity or a pen
> and paper to perform the same task conflates inefficiency with impossibility.

Id. at 14-16.

II.  Plaintiffs' Motion for Reconsideration

Plaintiffs argue that the court's Order [#289] finding Claim 31 of the '850 Patent and Claim 12 of the '996 Patent not patent eligible under Section 101 was based on a manifest error of law or was clearly unjust. Pl.'s Supp. to Mot. Recons. 14 [#297].

A court's reconsideration of a decision is "an extraordinary remedy which should be used sparingly." Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (quotation omitted). A party may not use a motion for reconsideration as a vehicle to repeat old arguments previously considered and rejected. Id. Motions for reconsideration "are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009). Plaintiffs fail to make the necessary showing.

Plaintiffs argue first that following the court's reasoning allowing other claims to proceed, the claims-at-issue also should not have been dismissed. For example, the court found Claim 20 of U.S. Patent No. 7,099,715 ("'715 Patent") was tied to a specific machine, a "cardiac monitoring apparatus" comprising a variety of computer components, including a T-wave filter. Plaintiffs argues that the claims-at-issue are similar (and, therefore, eligible) because the claims-at-issue here are directed to a special purpose remote cardiac monitoring system, not a general

5

purpose computer. Pl.'s Supp. 14-15 [#297]. Likewise, Plaintiffs argue that the claims-at-issue are dissimilar to claims in cases, such as Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 713 (Fed. Cir. 2014), where the claims were not tied to a particular machine. Pl.'s Supp. 15 [#297]. Plaintiffs further contend that the claims-at-issue improve the mobile cardiac telemetry field. Pl.'s Supp. 15 [#297]. Finally, Plaintiffs contend the court incorrectly conflated the first stage of the framework established by Alice Corp. Pty. Ltd. v. CLS Bank Int'l, 134 S. Ct. 2347 (2014), with the second stage. Pl.'s Supp. 15-16 [#297].

These arguments are largely the same as those previously considered by the court. See, e.g., Def.'s Mot. J. Pleadings 12 [#179] ("[I]t is clear that the '850 and '996 inventions are directed to specific inventions in the mobile cardiac telemetry field using special-purpose cardiac monitoring systems configured to obtain heart rate data, detect arrhythmia events, and process and report that information in specific manners that achieve substantial improvements over prior art."); Tr. Mot. J. Pleadings Hr'g 44-45 [#288] (arguing cardiac monitoring or telemetry devices are special purpose devices). That the court found claims in other patents not subject to dismissal does not demonstrate a manifest error of law or unjust finding that the claims-at-issue here are patent ineligible.

Second, Plaintiffs argue the court should not have compared the claims-at-issue with the claims found ineligible in Digitech, 758 F.3d 1344. Plaintiffs contend the Federal Circuit found the claim in Digitech abstract because the claim was not tied to a specific structure, and that the claims-at-issue are tied to a specific structure—specialized cardiac monitoring components. Pl.'s Supp. 16 [#297]. Plaintiffs are correct that the court in Digitech found the claim was abstract because it was "not tied to a specific structure or machine." 758 F.3d at 1350. However, adding "a processing system" and "a monitoring system" to a claim, as Plaintiffs have done here, does

6

not make the claim any less abstract. Bascom, 827 F.3d at 1348 ("An abstract idea on . . . a generic computer is still an abstract idea."). That the court's decision did not discuss the "processing system" or the "monitoring system" in relation to Digitech does not constitute a manifest error of law.

Third, Plaintiffs argue this court failed to consider Trading Techs. Int'l, Inc. v. CQG, Inc., 675 F. App'x 1001, 1003 (Fed. Cir. 2017) (unpublished). Trading Techs. affirmed a district court's finding at step 1 of the Alice framework that the patents challenged there did not simply claim displaying information on a graphical user interface, and instead, required a specific user interface system. 675 F. App'x at 1004. The Trading Techs. court found further that even if the patents were directed to an abstract idea, the claims recited an inventive concept, namely a dynamic display of data aligned with a static display of prices, allowing traders the ability to more efficiently and accurately place trades on an electronic trading system. Here, in contrast, the claims-at-issue include no similar improved interface functionality, and instead, point to a system that combines computer-generated data with human-generated data to produce a pictographic representation.

The court notes that Plaintiffs previously cited Trading Techs. during hearing on the underlying motion, contending that "what the federal circuit there is saying is when you do a 101 analysis, you can look at [§] 102 and [§] 103 as indicia; that if there indeed is novelty or non obviousness in the invention, that's an indicia that there's something inventive." Transcript 29 [304]. The unpublished decision suggests that "public interest in innovative advance is best served when close questions of eligibility are considered along with the understanding flowing from review of the patentability criteria of novelty, unobviousness, and enablement, for when these classical criteria are evaluated, the issue of subject matter eligibility is placed in the context

of the patent-based incentive to technologic progress." Trading Techs., 675 F. App'x at 1004. The Federal Circuit nonetheless agreed with the District Court that the "inventive concept" analysis requires something "different than" pre-amendment 35 U.S.C §§ 102 and 103. Id. Moreover, the published case law holds that "[t]he 'novelty' of any element or steps in a process, or even of the process itself, is of *no relevance* in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter.'" Intellectual Ventures I LLC v. Symantec Corp., 838 F.3d 1307, 1315 (Fed. Cir. 2016) (emphasis added by the Federal Circuit) (quoting Diamond v. Diehr, 450 U.S. 175, 188–89 (1981)); see also Mayo Collaborative Serv. V. Prometheus Labs, Inc., 566 U.S. 66, 91 (rejecting the "invitation to substitute §§ 102, 103, and 112 inquiries for the better established inquiry under § 101").[1]

In sum, Plaintiffs fail to show the court's decision constituted a manifest error of law or was clearly unjust.

III. Whether the Claims-at-issue are Representative of All Claims in the '850 and '996 Patents Asserted by Plaintiffs Against Defendant

When addressing invalidity of a patent, a court is not required to analyze each and every claim. Instead, the court may use a "representative" claim of the patent, provided the rest of the claims are "substantially similar and linked to the same abstract idea." Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n, 776 F.3d 1343, 1348 (Fed. Cir. 2014) ("The district court . . . correctly determined that addressing each claim of the asserted patents was

---

[1] After briefing on the motion for reconsideration was complete, Plaintiffs submitted additional Notices of Supplemental Authorities [#307, #308], presenting not only additional decisions of the Federal Circuit, but also several pages of briefing, and Defendant submitted a Response [#310]. These filings were made in violation of Local Rule 7.1(b)(3), which provides that "[a]ll other papers" not filed as permitted for moving and opposition papers "may be submitted only with leave of court." The court declines to review the briefing presented without permission, but has nonetheless reviewed the two decisions presented by Plaintiffs. The court finds neither provides any additional basis for reconsideration here.

unnecessary."). After finding that Claim 31 of the '850 Patent and Claim 12 of the '996 Patent were not patent-eligible under Section 101, the court requested additional briefing on the issue of whether the claims were representative. Plaintiffs' Memorandum in Support [#297] contends the claims-at-issue are not representative of claims 1-3, 5-6, 8-9, 21, and 32 of the '850 patent and Claim 23 of the '996 patent.[2] Defendant argues these claims are representative.

1.      Independent Claim 1 of the '850 Patent

First, Plaintiffs contend Claim 1 of the '850 patent (and its Dependent Claims) is dissimilar from the claims-at-issue, on the ground that includes an additional element of "selectively presenting" cardiac data "based on a measure of correlation." Plaintiffs are correct that this limitation—"selectively presenting the information based on a measure of correlation"—is not present in Claim 31 of the '850 Patent. But in considering Claim 31 and Claim 12 of the '996 Patent, the court read the claims "in conjunction with the patent specifications," and found they recited a system that receives computer-generated "arrhythmia information from the monitoring system and . . . human-assessed arrhythmia information from the monitoring station," U.S. Patent No. 7,212,850 col. 9 ll. 48-51, to "selectively present[] information regarding the identified events based on the measure of correlation" between the two sets of information, U.S. Patent No. 7,907,996 col. 1 ll. 45-47. Mem. & Order 12 [#289]. Accordingly, this additional element creates little meaningful distinction between Claim 1 and Claim 31.

---

[2] Although CardioNet also asserted Claim 1 of the '996 patent in its Preliminary Claim Construction Briefs [#129], it has now agreed that Claim 12 *is* representative of Claim 1. Pl.'s Supp. 1 n.1 [#297].

This court has found Claim 31 was directed to an abstract idea of correlating one set of data to another. And Claim 1 is directed to a substantially similar, if not identical, abstract idea. Significantly, Claim 1 correlates one set of data (machine-identified atrial fibrillation events) to another (human-identified atrial fibrillation events). Moreover, the claims recite substantially similar language. Claim 31 of the '850 patent recites a system that receives computer-generated "arrhythmia information from the monitoring system and . . . human-assessed arrhythmia information from the monitoring station" to "pictographically present [ ], using a common time scale, information regarding the heart rate data." Claim 1 recites an apparatus that receives "arrhythmia information from the monitoring system and . . . human-assessed arrhythmia information from the monitoring station" to "selectively present [ ] information regarding the identified events based on the measure of correlation."

The limitation ("selectively presenting") does not make Claim 1 less abstract. The Federal Circuit has recognized "that merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis." Elec. Power Grp., LLC v. Alstom S.A., 830 F.3d 1350, 1354 (Fed. Cir. 2016). The additional limitation is thus an ancillary part of the collection and analysis of the heart rate data, regardless of the claim language "selectively" and "measure of correlation." See id. Further, Claim 1 and the specification of the '850 Patent provide no indication of a particular tool for presentation. Rather, the specification states "processing system" and "monitoring system" and states that functional operations (i.e., "selectively presenting") can be implemented in "digital electronic circuitry." There is no evidence to suggest these machines are not generic computers.

Furthermore, the additional limitation ("selectively presenting") does not provide an "inventive concept" that transforms Claim 1 into a patent-eligible application of an otherwise patent-ineligible abstract idea. Similar to Claim 31 of the '850 Patent, the additional limitation merely "automate[s] or otherwise make[s] more efficient" traditional methods or techniques existing in the medical field. OIP Techs., Inc. v. Amazon.com, Inc., 788 F.3d 1359, 1363 (Fed. Cir. 2015). In sum, the court finds Claim 31 representative, and finds Claim 1 not patent-eligible.

    2.    Dependent Claims of the '850 Patent

Dependent claims incorporate the claim elements of their respective independent claim *and* additional claim elements that limit the scope of the independent claim. The dependent claims should therefore rise and fall with their respective independent claim, *unless* the additional claim elements render the dependent claim patent-eligible.

Plaintiffs contend the dependent claims of the '850 Patent further improve remote cardiac monitoring. They assert that dependent claims 2-3, 5-6, 8-9, 21, and 32 add elements that were absent from prior art device reports. Pl.'s Supp. 11 [#297]. Specifically, Claim 2 adds "presenting information regarding both incidence and duration of identified atrial fibrillation events during the defined time period." Pl.'s Supp. 5 [#297]. Claim 3 adds "information presented in beats-per-minute." Pl.'s Supp. 5 [#297]. Claim 5 adds "heart rate trend juxtaposed with atrial fibrillation burden." Pl.'s Supp. 5 [#297]. Claim 6 adds "heart rate trend and atrial fibrillation burden on the same graph." Pl.'s Supp. 5 [#297]. Plaintiffs assert Claim 9 adds features to inform and complement the output of devices practicing these claims. Pl.'s Supp. 11 [#297]. Specifically, Claim 9 adds "receiving input specifying the defined time period." Pl.'s Supp. 5 [#297]. Finally, Plaintiffs assert Claims 8, 21, and 32 provide alternative analysis and identification techniques of atrial fibrillation. Pl.'s Supp. 5 [#297].

In response, Defendant notes Plaintiffs merely list Claims 2-3 and 5-6 without explaining how they affect the analysis. Def.'s Opp'n to Pl.'s Mot. Recons. 7 [#304]. Defendant notes the limitations of Claim 9 are implicitly required by the claims this court already held ineligible. Id. at 7-8. Finally, Defendant contends that Claims 8, 21, and 32 recite nothing more beyond how a medical professional would analyze cardiac data. Id. at 8.

A dependent claim must provide an "inventive concept" that transforms the claim into a patent-eligible application of an otherwise ineligible abstract idea. See Content Extraction, 776 F.3d at 1349. It cannot merely recite well-known, routine, and conventional activities previously known in the industry. Id. at 1347-48; see Mayo, 132 S. Ct. at 1298. Here, however, Claims 2 and 3 merely provide more information to the physician, such as duration of identified events or heart rate data in beats-per-minute; Claims 5 and 6 provide presentation requirements; Claim 9 provides a data processing requirement; and Claims 8, 21, and 32 provide alternative analysis and identification techniques of atrial fibrillation. Each of these limitations describe well-known, routine, and conventional capabilities of a generic computer or of a physician. See Content Extraction, 776 F.3d at 1348. Therefore, each dependent claim fails to provide an inventive concept that narrows it from the basic abstract idea at the heart of Claim 1 and Claim 31 of the '850 Patent. See id.

3. Independent Claim 23 of the '996 Patent

Plaintiffs contend Claim 23 of the '996 Patent is patent-eligible because it combines elements of Claim 12 of the '996 Patent in a different and even more specific way. Pl.'s Supp. 5-6 [#297]. They also contend this "new" combination of elements provides an inventive concept. Pl.'s Supp. 5-6 [#297]. Defendant argues that Claim 23 is indistinguishable from Claim

12, which this court held patent-ineligible. Def.'s Opp'n to Pl.'s Mot. Recons. 8-9 [#304]. The court agrees.

Claim 12 of the '996 Patent identifies atrial fibrillation events, obtains data from a human being, receives a human assessment, and pictographically presents information regarding the data based on the human assessment. Claim 23 states an almost identical process but includes a "monitoring station" and a "processing system." Thus, Claim 23 is substantially similar and linked to the same abstract idea as Claim 12. See Content Extraction, 776 F.3d at 1348; see also Am. Well Corp. v. Teladoc, Inc., 191 F. Supp. 3d 135, 145 n.7 ("The recasting of a 'method' as a 'computer program' or an apparatus with a generic 'processor' and a 'computer program' adds nothing to the eligibility analysis." (citing CyberSource Corp. v. Retail Decisions, Inc., 654 F.3d 1366, 1375 (Fed. Cir. 2011))).

IV. Conclusion

For the foregoing reasons, Plaintiffs' Motion for Reconsideration [#296] is DENIED.

The court further finds as to Defendant InfoBionic's Renewed Motion for Judgment on the Pleadings that All Asserted Claims of U.S. Patent Nos. RE43,767, 7,212,850, 7,907,996 and 7,099,715 Are Invalid Under 35 U.S.C. § 101 [#281] that Claim 31 of the '850 Patent and Claim 12 of the '996 Patent are representative of all asserted claims of the '850 and '996 Patents.

IT IS SO ORDERED.

Date: March 29, 2018 /s/ Indira Talwani
United States District Judge